IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAINES & KIBBLEHOUSE, INC.        :        CIVIL ACTION
                                  :
        v.                        :
                                  :
BALFOUR BEATTY CONSTRUCTION,      :
INC.                              :        NO. 08-5505


MEMORANDUM

Dalzell, J.                                    June 1, 2011

        Plaintiff Haines & Kibblehouse, Inc. (a Pennsylvania

corporation) ("H&K") seeks declaratory relief and judgment in

this diversity action against Balfour Beatty Construction, Inc.

(a Delaware corporation with its principal place of business in

Atlanta, Georgia) ("Balfour") in an amount in excess of $1

million. Compl. ¶ 143, 150, 158, 165, 178. Balfour moves to

dismiss the case for failure to state a claim and/or to stay

litigation pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ.

P. 12(b)(7).[1]

_____

        [1] Defendant originally moved to dismiss the complaint on
December 2, 2008 when the case was pending before our late
colleague, Judge Thomas M. Golden. See Memorandum of Law in
Support of Balfour's Motion to Dismiss ("MTD1"). H&K responded
on January 1, 2009. See H&K's response ("Pl. MTD1 Resp.").
Balfour replied a month later. ("Def. MTD1 Repl."). Almost two
years elapsed before the Chief Judge reassigned this case to us,
following Judge Golden's death. We denied the motion to dismiss
without prejudice and ordered the defendant to file a renewed and
updated motion to dismiss. Relying in large part on their
original motion to dismiss, defendant filed a renewed motion.

As will be seen, given the unusual procedural posture, we must embark on an extended analysis of relatively arcane areas of law in order to decide this motion.

## I.   **Factual Background**

Balfour was the general contractor for the Commonwealth of Pennsylvania's Department of Transportation ("PennDOT") for the construction of the Route 222 Bypass project (the "Project"). Compl. ¶ 13.  On March 15, 2004, Balfour entered into a contract with PennDot to furnish work, labor, materials and services for the construction of the Project.  <u>Id.</u> ¶ 15.  Balfour's contract with PennDot involved about $57.7 million (the "Prime Contract"). <u>Id.</u> ¶ 16.  On April 21, 2004, Balfour entered into a subcontract with H&K in the initial amount of $13,399,897.20 (the "Subcontract").  <u>Id.</u> ¶ 17.  The Prime Contract included a special provision for project milestones.  <u>Id.</u> ¶ 18.

The special provision required that all Project construction would be completed on or before July 7, 2006 or

_____

<u>See</u> Brief in Support of the Amended Motion to Dismiss and/or Stay Litigation ("MTD2").  H&K responded relying in large part on its original response ("Pl. MTD2 Resp.").  Defendant thereafter replied (Def. MTD2 Repl.").  Because the parties both rely on their previous motions and responses, this Memorandum addresses the arguments presented in both sets of motions to dismiss, the responses thereto, and the replies.

Balfour would be subject to PennDot's assessment of road user liquidated damages. Id. ¶ 19. Because PennDot did not issue the "Notice to Proceed" on the Project by the date the Prime Contract anticipated, PennDot granted a seventy-three-day extension to the Project milestone date. Id. ¶ 21. This extension revised the Project milestone date from July 7, 2006 to September 19, 2006. Id. ¶ 22.

H&K avers that Balfour knew that if Balfour failed to complete the predecessor work and did not provide H&K with unrestricted access to the worksite, H&K could not complete the work it was contracted to do and this would result in H&K's increased costs and expenses for which Balfour would be held accountable. Id. ¶ 36. H&K also avers that at no time prior to entering into the Subcontract did Balfour inform H&K that Balfour would be making unilateral changes to the sequence or durations of predecessor work that would directly affect H&K's work, but, instead, expressly and impliedly agreed "to efficiently progress the work." Id. ¶ 43 [sic].

H&K claims that Balfour "failed to commence, prosecute and complete the predecessor activities" in the prescribed sequences and within the specific timeframe agreed to with H&K and upon which H&K based its pricing. Id. ¶ 63. When Balfour

notified H&K to proceed with its subcontract work, Balfour had

not completed the predecessor work and had not yet procured the

materials to complete the work H&K agreed to do.  Id. ¶ 65.  H&K

claims that Balfour's failure to complete the predecessor work

with diligence and with sufficient manpower and equipment, as

well as its denial of full access to the site to H&K interfered

with the planned sequence of operations by H&K and caused H&K to

incur additional costs.  Id. ¶ 68.

As of November of 2005, the Project was significantly

behind schedule, the necessary predecessor work needed for H&K's

placement of subbase and paving remained incomplete, and Balfour

allegedly had made many unilateral changes to the schedule and

sequence for the remaining work.  Id. ¶ 92.  Although the Project

was supposed to be completed in late 2006, it was not completed

until late 2007.  Id. ¶ 96.  Balfour has not yet fully paid H&K

for the impacts of its poor scheduling on H&K's work.  Id. ¶ 98.

H&K claims that Balfour has also failed to make a claim to

PennDot for the increased costs of H&K completing its work,

including, but not limited to, the increase in the unit prices

for the work H&K performed.[2]  Id. ¶ 99.

---

[2] Balfour disputes this contention.  This dispute will be
canvassed at length below.

H&K believes that as of September 19, 2006 PennDot

began assessing liquidated damages against Balfour.  Id. ¶ 111.

PennDot never assessed damages against H&K.  Id. ¶ 113.  H&K

estimates that the minimum impact of Balfour's failings on H&K's

work exceeded ten million dollars.  Id. ¶ 117.

## II.  **Procedural History**

The crux of this motion to dismiss will be found in the

relationship between H&K and the courts rather than the

relationship between the parties.  On September 18, 2006, H&K

filed a complaint against Balfour in the Montgomery County Court

of Common Pleas.  Balfour removed that case to federal court at

C.A. No. 06-4807[3] and filed a motion to dismiss.  Judge Golden

dismissed without prejudice all of H&K's claims except H&K's

claim for declaratory relief.  Judge Golden remanded that claim

back to state court on June 7, 2007.  In doing so, Judge Golden

relied upon Balfour's Subcontract-based defenses to the action,

holding that:

> The plain meaning of Article 2.2.20 is that
> any claim that the subcontractor (Plaintiff)
> has for performing extra work or arising out
> of a delay or any other claim, whether it be

_____

[3] As noted, the case was originally assigned to the late
Judge Golden.

5

> against PennDot or the Contractor (Defendant)
> must first be compensated by the Owner
> (PennDot) to the Contractor (Defendant)
> before Plaintiff can bring suit against the
> Defendant.

Haines & Kibblehouse, Inc. v. Balfour Beatty Constr., Inc., No.
06-4807, slip. op. at 4 (E.D. Pa. Jun. 7, 2007) (we shall refer
to this case hereinafter as "Haines I") (emphasis in original).
H&K filed a motion for reconsideration of that Order, which Judge
Golden denied on July 27, 2007. Haines I, slip. op. at 1 (Jul.
27, 2007). Judge Golden also in that Order denied H&K's request
to certify the Court's Memorandum Opinion for interlocutory
appeal. Id.

     H&K nevertheless on August 22, 2007 filed a Notice of
Appeal from Judge Golden's July 27, 2007 Order in the hope of
standing on its complaint and securing appellate review of the
four counts that Judge Golden dismissed without prejudice. MTD1,
Ex. 5 (Letter brief of Sept. 5, 2007 in C.A. No. 07-3520 (3d
Cir.)). H&K declared that "there is no way for H&K to cure the
'defect' that the District Court found in the Complaint" because
the condition precedent, as Judge Golden defined it, "will never
be achieved." Id. at 3. Thus, H&K contended to the Court of
Appeals that "H&K must stand on the allegations in the Complaint
and the order denying the Motion for Reconsideration of the June

5, 2007 Order must be considered a final order." Id. at 5. On

January 30, 2008, our Court of Appeals issued an order providing

that although it was not appropriate at that time to dismiss the

case based on a jurisdictional defect, that view did "not

represent a finding that the Court has jurisdiction to hear the

appeal in this case." Pl. MTD1 Resp., Ex. H (Order dtd. Jan. 30,

2008 in C.A. No. 07-3520 (3d Cir.)). The parties instead were

ordered to address the effect of 28 U.S.C. § 1447(d)[4] on the

Court's appellate jurisdiction. Id.

Thereafter -- but before our Court of Appeals set a

briefing schedule -- the parties were obliged to participate in

the Third Circuit's mandatory mediation program. Pl. MTD2 Resp.

at 6 n.6. The mediation did not succeed. Id. The Mediation

Program Director, however, did not inform the Case Manager that

the mediation had failed, id., and so a briefing schedule did not

promptly issue. Pl. MTD2 Resp., Ex. K (September 25, 2008

correspondence from Paul A. Logan, Esq., to Joseph A.

Torregrossa, Esq.). H&K pressed our Court of Appeals to issue a

---

[4] 28 U.S.C. § 1447(d) reads, "An order remanding a case to
the State court from which it was removed is not reviewable on
appeal or otherwise, except that an order remanding a case to the
State court from which it was removed pursuant to section 1443 of
this title shall be reviewable by appeal or otherwise."

scheduling order, which it ultimately did on September 29, 2008.
Id., Ex. K; MTD1, Ex. 10.

H&K claims that before the briefing schedule could
issue, it discovered that Balfour had failed to include H&K's
claim in its Board of Claims complaint, despite Balfour's
representations that it would include H&K's claims in that
complaint.  Pl. MTD2 Resp. at 6 n.7.  Balfour indeed filed an
amended complaint in the Board of Claims on November 9, 2007.
Id., Ex. N.  H&K asserts that, as with the original complaint,
Balfour's amended complaint to the Board of Claims also failed to
mention H&K by name or include any of its claims.  Id. at 7.  On
April 29, 2008, PennDot's litigation counsel, Jeffrey W. Davis,
Esq., confirmed to H&K's counsel that the pleadings failed to
identify any affirmative subcontractor claims, and PennDot
invited Balfour to provide clear and specific evidence that
Balfour presented any of H&K's claims to PennDot.  Id., Ex. M.

H&K avers that once it learned from PennDot's counsel
that Balfour had indeed not included its claims in Balfour's
amended complaint to the Board of Claims, it informally sought to
"withdraw" its appeal.[5]  MTD1, Ex. 8, 10; Pl. MTD2 Resp., Ex. O.

_____

[5] H&K merely sent a two-sentence letter to the "Office of
the Clerk".  See MTD2 Resp., Ex. O.

8

H&K did not do this until November 5, 2008, one day after it had

filed a new complaint in the Court of Common Pleas of Montgomery

County.  See generally plaintiff's complaint.  As Balfour would

not consent to such a "withdrawal" of H&K's appeal, it instead

moved to dismiss H&K's appeal on December 3, 2008.  Pl. MTD2

Resp., Ex. P.  In response, on December 17, 2008 H&K moved to

voluntarily dismiss its appeal.  Id., Ex. Q.  On January 22,

2009, our Court of Appeals granted H&K's motion to voluntarily

dismiss its appeal.  Id., Ex. R (Ord. of Jan. 22, 2009 in C.A.

No. 07-3520 (3d Cir.)).

Meanwhile, Balfour removed H&K's second state court

action to this court on November 24, 2008 ("Haines II").  This

second complaint had the same parties, the same claims, and

involved exactly the same set of alleged facts as the first

action.  Balfour promptly filed a motion to dismiss the complaint

based, in part, on claim preclusion.  Judge Golden heard oral

argument on the motion to dismiss but did not rule on it before

he died.  Haines II was then transferred to our docket.  As

noted, given the long delay and the tortured history in the Court

of Appeals, we denied the motion to dismiss without prejudice and

afforded Balfour the right to file an amended motion to dismiss.

Balfour thereafter filed an amended motion to dismiss and/or stay

the litigation, which we now address.

## III. <u>Analysis</u>

Balfour moves to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  It also moves under Rule 12(b)(7) for failure to join an indispensable party. In the alternative, Balfour moves to stay this action pending resolution of the dispute between it and PennDot.  H&K responds that its discovery that Balfour had not included its claims in its amended complaint to the Board of Claims was a "watershed development" in the context of H&K's Third Circuit appeal and its Montgomery County remanded matter because it showed that the condition precedent Judge Golden articulated had not been met and this "eviscerated the factual underpinnings of the June 2007 Order," thereby rendering that Order moot.  Pl. MTD2 Resp. at 7.

### A.   <u>Defendant's Rule 12(b)(6) Motion to Dismiss</u>[6]

---

[6] To survive a Rule 12(b)(6) motion, a party's factual allegations must raise a right to relief above the speculative level, and a complaint must allege facts suggestive of illegal conduct. <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 563 n.8 (2007); <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) (citing <u>Twombly</u>). The Supreme Court recently clarified the <u>Twombly</u> standard in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009), where it held that a complaint must contain sufficient factual matter to state a claim for relief that is "plausible on its face." <u>Iqbal</u>, 129 S.Ct. at 1949 (internal quotations omitted).

Balfour argues that H&K has failed to state a claim

upon which relief can be granted because <u>Haines II</u> is barred by

claim preclusion.  Should we not find that the entire action is

barred by claim preclusion, Balfour further argues that H&K is

barred by judicial estoppel from claiming that Judge Golden's

July 27, 2007 Order was not final.  Finally, Balfour argues that

if we do not find that the action is thus barred, there are

---

A claim has facial plausibility when the plaintiff
pleads facts sufficient to allow the court to "draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  <u>Id.</u>  The plausibility standard is not as
demanding as a "probability requirement," but it does oblige a
plaintiff to allege facts sufficient to show that there is more
than the mere possibility that a defendant has acted unlawfully.
<u>Id.</u> (internal quotations omitted).
    <u>Iqbal</u> established two principles that now underlie the
Rule 12(b)(6) inquiry.  First, although a court must accept as
true the factual allegations in a complaint, this does not extend
to legal conclusions.  <u>Id.</u>  "Threadbare recitals of the elements
of a cause of action, supported by mere conclusory statements, do
not suffice."  <u>Id.</u>  Second, a complaint must state a plausible
claim for relief to survive a motion to dismiss.  <u>Id.</u> at 1950.
Determining whether a complaint states a plausible claim for
relief is "a context-specific task that requires the reviewing
court to draw on its judicial experience and common sense."  <u>Id.</u>
If the well-pleaded facts allege, but do not "show" more than the
mere possibility of misconduct, then the pleader is not entitled
to relief within the meaning of Rule 8(a)(2).  <u>Id.</u>
    In deciding a motion to dismiss, "courts generally
consider only the allegations in the complaint, exhibits attached
to the complaint, matters of public record, and documents that
form the basis of a claim.  A document forms the basis of a claim
if the document is 'integral to or explicitly relied upon in the
complaint.'"  <u>Lum v. Bank of America</u>, 361 F.3d 217, 222 n.3 (3d
Cir. 2004) (internal citations omitted).

alternative, independent reasons why H&K's complaint must be
dismissed.

### 1. <u>Claim Preclusion</u>

Balfour contends that H&K's second action is barred by
the principle of claim preclusion because it is duplicative of
the first action.  There is no doubt that this action is between
the same two parties, on the same Subcontract, for the same
Project.  <u>Haines II</u> requests the same damages through the same
factual allegations and most of the same legal theories, and
includes five counts that are largely indistinguishable from the
five counts alleged in <u>Haines I</u>.  MTD1 at 13.

Balfour argues that by standing on its complaint in the
first action, H&K intentionally converted the July 27, 2007 Order
into a final judgment in order to obtain immediate appellate
review.  <u>Id.</u>  Thus, even though the Court of Appeals ultimately
allowed H&K to voluntarily dismiss the first appeal, Balfour
argues that H&K cannot now claim that there was never a final
order in <u>Haines I</u>.  <u>Id.</u>  H&K responds that Judge Golden's Order
was never made final because our Court of Appeals granted its
motion to voluntarily dismiss the appeal before definitively
holding that it had jurisdiction to hear the appeal.

Although our Court of Appeals has not determined

whether state or federal preclusion analysis applies in
successive-diversity proceedings, it has suggested that it need
not decide this issue because the holding would be the same under
either state or federal law.  Lubrizol Corp. v. Exxon Corp., 929
F.2d 960, 962-63 (3d Cir. 1991).  "The doctrine of res judicata
protects litigants from the burden of relitigating an identical
issue with the same party or his privy and promotes judicial
economy by preventing needless litigation."  Lewis v. Smith, 361
F. App'x 421, 423 (3d Cir. 2010) (internal quotation marks
omitted).

        The doctrine of claim preclusion has three elements:
(1) a final judgment on the merits must have been rendered in a
prior suit; (2) the same parties or their privies must have been
involved in both suits; and (3) the subsequent suit must have
been based on the same cause of action as the original.
Lubrizol, 929 F.2d at 963.  Claim preclusion bars not only
subsequent litigation of issues decided in the first proceeding,
but also bars issues that could or should have been litigated in
the first proceeding.  Selkridge v. United of Omaha Life Ins.
Co., 360 F.3d 155, 172 (3d Cir. 2004) (holding that if the three
factors of claim preclusion are present, a claim that was or
could have been raised previously must be dismissed as

13

precluded).

In considering whether to dismiss a complaint on the basis of claim preclusion, "[w]e [do] not apply this conceptual test mechanically, but focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit." Sheridan v. NGK Metals Corp., 609 F.3d 239, 260 (3d Cir. 2010) (internal quotation marks omitted). "In so doing, we avoid piecemeal litigation and conserve judicial resources." Id.

Here, there is no question that the same parties were involved in both suits. In addition, this suit is based on the same cause of action upon which the first suit was based. H&K and Balfour agree on these points. The only question remaining is whether the events that followed Judge Golden's July 27, 2007 Order rendered that Order "final" for the purposes of claim preclusion.

Generally, a dismissal without prejudice does not represent a final judgment on the merits and is not appealable. Bethel v. McAllister Brothers, Inc., 81 F.3d 376, 381 (3d Cir. 1996). "Where, however, the plaintiff cannot cure the defect in the complaint or elects to stand on the complaint without amendment, the order becomes final and appealable." Id.

When H&K filed its notice of appeal, our Court of
Appeals ordered the parties to address the effect of 28 U.S.C. §
1447(d) on its appellate jurisdiction.  Pl. MTD2 Resp., Ex. H.
It also cautioned that "[t]his order does <u>not</u> represent a finding
that the Court has jurisdiction to hear the appeal in this case."
<u>Id.</u> (emphasis in original).

Balfour argues that H&K "converted" the July 27, 2007
Order from an otherwise non-final judgment to a "final and
appealable" decision in order to invoke the jurisdiction of our
Court of Appeals.  MTD1 at 17.  Balfour cites <u>Bethel v.</u>
<u>McAllister Brothers, Inc.</u>, 81 F.3d 376, 381 (3d Cir. 1996),
<u>Garber v. Lego</u>, 11 F.3d 1197, 1198 n.1 (3d Cir. 1993), and
<u>Borelli v. City of Reading</u>, 532 F.2d 950 (3d Cir. 1976), in
support of its contention.  But those cases are distinguishable.

In <u>Bethel</u> and <u>Garber</u>, our Court of Appeals contemplated
its jurisdiction before either reaching the merits or dismissing
the appeal.  If Balfour's argument were correct, then in <u>Bethel</u>
and <u>Garber</u> our Court of Appeals would have simply noted that the
appellant had invoked appellate jurisdiction and moved on from
there.  But that is not what happened.  In each case, our Court
of Appeals carefully considered whether it had jurisdiction
before determining that it did and <u>then</u> decided the appeal on the

15

merits. Borelli is distinguishable because there the plaintiff did not elect to stand on her complaint.

In Hagan v. Rogers, 570 F.3d 146, 151 (3d Cir. 2009), our Court of Appeals considered earlier cases where it had held that a plaintiff had elected to stand on its complaint. The Court noted that in Frederico v. Home Depot, 507 F.3d 188, 192 (3d Cir. 2007), it had decided that the plaintiff had elected to stand on her complaint "where at no time during the proceedings did she seek to correct the purported pleading deficiencies, but instead repeatedly asserted that her complaint was sufficient as filed." Hagan, 570 F.3d at 151. Hagan also noted that it had jurisdiction "when a plaintiff did not amend his dismissed complaint within the 30 days allotted by the district court." Id. (in reference to Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 n.5 (3d Cir. 1992)). The Court also considered that it had held that certain plaintiffs "elected to stand on their dismissed claims after they renounced, by letter briefs filed with this Court, any intention to reinstitute proceedings against the defendants at issue." Id. (referring to in Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991)).

In Hagan itself, the Court found that none of the plaintiffs amended their complaints within the thirty days the

16

District Court afforded.  In addition, all of the plaintiffs

joined in the appeal and there was "no evidence that any ever

wavered from their argument that they should be permitted to join

under Rule 20." Id.  Thus, the Court found that the

circumstances confirmed that the appellants stood on their

initial complaint. Id.  Indeed, just last week the Court in

Boretsky v. Governor of N.J., No. 2011 WL 2036440, *2 (3d Cir.

May 25, 2011), held that it was "satisfied that the plaintiffs'

actions demonstrated that they elected to stand upon their

original complaint" (emphasis added).

We must therefore examine H&K's actions to determine

whether our Court of Appeals's jurisdiction had attached.  Here,

H&K told our Court of Appeals that it was electing to stand on

its complaint.  But then, before our Court of Appeals had decided

whether it indeed had jurisdiction to hear the appeal, H&K

attempted to withdraw its appeal.  When H&K learned that it could

not informally "withdraw" its appeal, a month and a half later it

moved voluntarily to dismiss its appeal.  Our Court of Appeals

granted that motion before it decided whether it indeed had

jurisdiction over H&K's appeal.

Thus, based on H&K's actions, for purposes of our claim

preclusion analysis we hold that H&K did not ultimately "elect to

stand on its complaint," and Judge Golden's July 27, 2007 Order
was never transmuted into a "final" order.  All elements of claim
preclusion are thus not satisfied here.

## 2.  **Judicial Estoppel**

But Balfour also argues that H&K is judicially estopped
from asserting that the July 27, 2007 Order was not a final
judgment.  Balfour reports that it has incurred significant costs
to defend the actions that H&K elected to pursue in our Court of
Appeals, in state court, and in Haines I and II, where the
parties have exchanged multiple briefs on the legal merits of
H&K's declaratory judgment action.  MTD1 at 18.

H&K contends that it argued that our Court of Appeals
should deem Judge Golden's July 27, 2007 Order final because it
believed that the Subcontract did not contain a condition
precedent that would bar H&K from proceeding against Balfour on
claims in which Balfour, and not PennDot, is responsible for the
damages sought.  Pl. MTD1 Resp. at 21.  H&K argues that when it
allegedly discovered that the condition precedent had been waived
(because Balfour did not represent H&K's claims in its filing
with PennDot), this altered the legal landscape and rendered its
appeal moot.  Id.

While we have just decided that this action is not claim precluded, we now address the issue of whether the entire action is judicially estopped, which is within our discretion to do.[7]  <u>Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. General Motors Corp.</u>, 337 F.3d 314, 319 (3d Cir. 2003).  Our Court of Appeals has held that "a plaintiff, who has obtained relief from an adversary by asserting and offering proof to support one position, may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention."  <u>Id.</u> (internal quotation marks omitted).  The Court also recognized "the intrinsic ability of courts to dismiss an offending litigant's complaint without considering the merits of the underlying claims when such dismissal is necessary to prevent a litigant from 'playing fast and loose with the courts.'"  <u>Id.</u> (quoting <u>Scarano v. Central R. Co. of N.J.</u>, 203 F.2d 510, 513 (3d Cir. 1953)).

_____

[7] Balfour raised judicial estoppel by motion before Judge Golden in <u>Haines II</u> and Judge Golden entertained oral argument on that motion before he died.  <u>See</u>, <u>e.g.</u>, Pl. MTD2 Resp., Ex. L, transcript of May 7, 2009 argument at 12 ("THE COURT: Because plaintiffs can come in in state court, unlike federal court, can withdraw cases with impunity.  In federal court you can run into a problem."  H&K's counsel responded, "I understand, Your Honor, yes.").

19

To be sure, the doctrine of judicial estoppel should only be applied to avoid a miscarriage of justice. Id. Judicial estoppel focuses on the relationship between the litigant and the judicial system, and seeks to preserve the integrity of that system. Id. at n.7. In the absence of "any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory." Id. (internal quotation marks omitted). But the estopped party need not have actually gained an advantage because "the application of judicial estoppel does not turn on whether the estopped party actually benefitted from its attempt to play fast and loose with the court." Id. at 324.

A party is judicially estopped if (1) it has taken two positions that are irreconcilably inconsistent, (2) it changed his or her position in bad faith (i.e., with intent to play "fast and loose" with the courts), and (3) there is no lesser sanction that will adequately remedy the damage done by the litigant's misconduct. Id. Equity requires that the presiding court give the party to be estopped a meaningful opportunity to provide an explanation for its changed position. Id. at 320.

## a. **Irreconcilably Inconsistent Positions**

Here, H&K took two irreconcilably inconsistent positions. It argued before our Court of Appeals that "[t]he condition precedent that the District Court inserted into Article 2.2.20 of the Subcontract will never be achieved. And, accordingly, H&K will never be able to re-file its Complaint." MTD1, Ex. 5 at 3. H&K argued to our Court of Appeals that the Order should be deemed "final" because the District Court interpreted the Subcontract to require that H&K's claims should first be submitted to PennDot through Balfour before H&K could be permitted to bring a suit against Balfour. Id. H&K justified its appeal of the District Court's interpretation of the Subcontract because, as it without qualification put it to the Court of Appeals on September 5, 2007,

> Stated in the most succinct terms, PaDOT will never -- nor should it -- compensate BBCI (or H&K) for BBCI's breaches of its Subcontract with H&K. Accordingly, the condition precedent as interpreted by the District Court can never be met, H&K will never be permitted to pursue its claims against BBCI and BBCI will be able to freely breach the Subcontractor Agreement and damage H&K without accountability.

Id. at 4.

H&K argued that at least some of the damages that it

21

sustained were due to Balfour's behavior, not PennDot's.  Id.

Because H&K believes it has claims against Balfour, and because

Balfour had no legal avenue through which to seek compensation

for those claims from PennDot (because PennDot was not a party to

the Subcontract), H&K concluded that the condition precedent as

Judge Golden defined it could "never be achieved" and PennDot

would "never" compensate Balfour for H&K's breach of contract

claims against Balfour.  Id. at 3, 4.  Thus, H&K argued, this

"eliminates the possibility of a second lawsuit."  Id. at 5 n.3

(emphasis added).

        If we accept H&K's understanding of Judge Golden's

interpretation of the condition precedent at face value, this was

sound logic.  H&K then argues that it changed its position when

it allegedly learned that Balfour had filed a claim for

compensation from PennDot without preserving H&K's claims.  But

this later-acquired knowledge was of no significance because all

that Balfour had done was precisely what H&K argued to the Court

of Appeals Balfour would do -- seek compensation for its own

claims against PennDot without including H&K's claims.  But H&K

now argues that when Balfour filed a complaint with the Board of

Claims without seeking such specific compensation for H&K's

claims, Balfour (somehow) did something radically new.  This

purportedly paved the way for H&K to file "a second lawsuit" that H&K flat-footedly on September 5, 2007 told the Court of Appeals was an impossibility.

These positions are irreconcilably inconsistent.  H&K argued before our Court of Appeals that it should be permitted to appeal because Balfour would "never" legally be able to seek compensation for H&K's claims against it from PennDot.  H&K now argues before us that, precisely as it predicted to the Court of Appeals, Balfour failed to seek compensation from PennDot for H&K's claims against it.  H&K contends that it relied on Balfour's representations to Judge Golden that it would present its claims before PennDot, but H&K also then knew -- and indeed on September 5, 2007 stressed to the Court of Appeals -- that Balfour would "never" be able to assert those claims when H&K argued that its appeal should be accepted.  H&K cannot have it both ways.

H&K also took two irreconcilably inconsistent positions when it argued to our Court of Appeals that it would "never be able to refile its complaint" but then -- after the case had reposed on our Court of Appeals's docket for well over a year and the parties had been through the mandatory mediation process -- it on November 4, 2008 filed "a second complaint" in the Court of

23

Common Pleas of Montgomery County before bothering to voluntarily dismiss its appeal. H&K's thrice-used "never" to the Court of Appeals meant that there were <u>no</u> circumstances under which it could refile "a second complaint." Filing such a complaint while the appeal was still pending is far from "never".

H&K also represented to the state court in its second complaint -- almost a year to the day after Balfour filed its amended complaint in the Board of Claims -- that its appeal to our Court of Appeals had been dismissed, but it did not make any attempt -- formal or informal -- to withdraw its appeal until <u>after</u> it filed the second complaint. Compl. ¶ 32 ("H&K has voluntarily dismissed both the Remanded Montgomery County Action and the Third Circuit Appeal without prejudice"); Pl. MTD2 Resp., Ex. O. H&K has offered no explanation for why it took these irreconcilably inconsistent positions, nor why it represented to the Montgomery County Court of Common Pleas the untruth that its appeal had been dismissed when it had not then even tried to withdraw that appeal. Thus, we find that H&K took two irreconcilably inconsistent positions, and H&K has not provided an explanation to square them.

## b.   **Bad Faith**

Our Court of Appeals held that a rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose.  Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416-18 (3d Cir. 1998).  To determine whether H&K had knowledge of its claim and a motive to conceal that claim, we must examine the timing of H&K's actions.  In its September 5, 2007 letter to our Court of Appeals, H&K argued that it would "never" be able to refile its complaint because H&K would "never" be able to meet the condition precedent as the District Court defined it.  MTD1, Ex. 5 at 5 n.3.  H&K did not include the caveat that it would be able to refile if Balfour waived the condition precedent because it doubtless knew that our Court of Appeals would likely not accept jurisdiction if H&K had included such a disclaimer.

H&K represents that it was PennDot's April 29, 2008 letter explaining that because Balfour had not presented H&K's claims to PennDot -- that is, the very reality H&K on September 5, 2007 predicted to the Court of Appeals that was the keystone of its assertion of finality -- that led H&K to decide that its appeal of Haines I was moot.  Compl. ¶ 127.  And yet it was not

until over six months later that H&K first informally attempted to "withdraw" its appeal -- after it had availed itself of the benefits of pressure on Balfour of a pending appeal, the Third Circuit's mandatory mediation program and the obtaining of a briefing schedule.

H&K argues that it did not burden the judicial system because it moved to voluntarily dismiss its appeal before our Court of Appeals's jurisdiction ever attached. But after H&K elected to stand on its complaint, our Court of Appeals (1) elected not to summarily dismiss the appeal, (2) assigned a court-appointed mediator who attempted to broker a settlement between the parties, (3) entertained and ruled on motions, and (4) at H&K's September 25, 2008 request, issued a briefing schedule directing the parties to brief the merits of H&K's appeal. MTD1, Ex. 6; Ex. 10; Pl. MTD2 Resp. at 6 n.6; Ex. K.

Notably, Our Court of Appeals issued a briefing schedule on September 29, 2008 after receiving H&K's request four days earlier to set that schedule. Pl. MTD2 Resp., Ex. K. H&K filed its second complaint on November 4, 2008 in the Montgomery County Court of Common Pleas and did not move to voluntarily dismiss its appeal until December 17, 2008 -- two weeks after Balfour had filed a motion to dismiss H&K's appeal, and more than

a month after it had filed its second complaint with the Court of
Common Pleas.

Thus, we can only conclude that H&K was aware of its
"new" claim well before it requested the briefing schedule.  But
it had the motive to conceal this claim in the hope of keeping
the appellate pressure on Balfour while taking advantage of the
Third Circuit's mandatory mediation program -- all well before it
formally moved to have its appeal voluntarily dismissed.

In addition, in the complaint that H&K filed on
November 4, 2008 in the Montgomery County Court of Common Pleas,
H&K represented to that court that "H&K has voluntarily dismissed
both the Remanded Montgomery County Action and the Third Circuit
Appeal without prejudice."  Compl. ¶ 32.  But that simply was not
true.  To the contrary, H&K's representation was "tantamount to a
knowing misrepresentation to or even fraud on the court".
Krystal Cadillac, 337 F.3d at 324 (internal quotation marks
omitted).

H&K represented to the Montgomery County Court of
Common Pleas that it had dismissed its Third Circuit appeal when
in fact it had not even <u>filed</u> its motion to voluntarily dismiss
its claim, let alone given Balfour the chance to respond or our
Court of Appeals the chance to rule on it.  As a result, Balfour

removed this second action to this Court, where <u>Haines II</u> has reposed since November 24, 2008, and where H&K had the benefit of Judge Golden's judicial resources, including oral argument on Balfour's motion to dismiss.  H&K filed its second complaint while its appeal was still pending in our Court of Appeals, sought the jurisdiction of the Court of Common Pleas of Montgomery County before it was proper to do so, and thereby forced Balfour to defend itself simultaneously in three courts -- Judge Golden's, the Court of Appeals, and the Common Pleas Court -- for the same action.

        In our view, once Judge Golden dismissed H&K's claims without prejudice, H&K had three options.  First, it could have appealed, as it originally attempted to do, making the argument that Balfour was by then time-barred from bringing H&K's claims to PennDot and that Balfour could not assert claims on its behalf to the Board of Claims anyway.  Second, H&K could have decided that Balfour was not time-barred from asserting H&K's claims (and had standing to bring them) and waited to refile its complaint once Balfour had collected, or failed to collect, on H&K's claims from PennDot.  Or, third, H&K could have decided that Balfour was not time-barred from asserting its claims, but when it realized that Balfour had "waived the condition precedent" by failing to

represent H&K's claims (a new legal theory that H&K raises for the first time in this action), it could have refiled its complaint based on that alleged waiver.

For reasons known only to H&K's counsel, H&K did not view these options as mutually exclusive. Instead, H&K tried to play all the legal notes at once. In doing so, H&K affirmatively misrepresented its procedural position and its claims to the Court of Common Pleas of Montgomery County, to our Court of Appeals, and to Judge Golden.

H&K's ill-conceived strategy cost both sides money, wasted scarce judicial resources in both the federal and state court systems, and abused the Third Circuit's mandatory mediation process and that Court itself. Regrettably, we can only conclude that this was and is an "affront to the court's authority or integrity." <u>Henderson v. Chartiers Valley School</u>, 136 F. App'x 456, 460 n.4 (3d Cir. 2005) (internal quotation marks omitted).[8]

---

[8] Our Court of Appeals has noted that "a party has not displayed bad faith for judicial estoppel purposes if the initial claim was never accepted or adopted by a court or agency." <u>Dam Things from Denmark v. Russ Berrie & Co., Inc.</u>, 290 F.3d 548, 559 n.16 (3d Cir. 2002) (quoting <u>Montrose Med. Group Participating Sav. Plan v. Bulger</u>, 243 F.3d 773, 778 (3d Cir. 2001)). Here, although our Court of Appeals had not yet adopted H&K's claim that Judge Golden's July 27, 2007 Order was a final judgment, the Third Circuit's mandatory mediation program certainly had to accept H&K's claim to conduct the mediation. And although H&K

Thus, we find that H&K played fast and loose with the courts --

with as many tribunals as it could, in fact -- and acted in bad

faith.

### c. __No Lesser Sanction__

As our Court of Appeals has noted, "[t]he fact that a

sanction is to be used sparingly does not mean that it is not to

be used when appropriate." <u>Krystal Cadillac</u>, 337 F.3d at 325.

To employ judicial estoppel, we must find that it is tailored to

address the harm identified and that no lesser sanction would

adequately remedy the damage done by H&K's misconduct.  Here, any

lesser sanction -- such as, for example, ordering H&K to pay all

knew about the "changed facts" -- such as they were -- ever since
PennDot's April 29, 2008 letter, it still pushed the Court of
Appeals for a scheduling order on September 25, 2008 after the
mediation failed.  This was tantamount to affirmative
misrepresentation because H&K had all the information it needed
to seek to voluntarily dismiss its appeal, and yet instead it
continued to engage our Court of Appeals's resources for several
more months.  H&K correctly notes that our Court of Appeals has
held that there is an exception to the general concept of
judicial estoppel regarding jurisdictional facts or positions;
courts generally refuse to resort to the principles of judicial
estoppel to prevent a party from "switching sides on the issue of
jurisdiction." <u>Whiting v. Krassner</u>, 391 F.3d 540, 544 (3d Cir.
2004) (internal quotation marks omitted).  But here H&K did not
just "switch sides" on the jurisdictional issue.  H&K also
determined that it had a new claim that it believed rendered its
appeal moot, but it concealed this from our Court of Appeals for
months until it had availed itself of the Third Circuit mandatory
mediation program and sought and obtained a briefing schedule.

of Balfour's legal fees and costs associated with its multi-forum folly -- would still reward H&K for duplicitous conduct in the course of its appeals process. More seriously, it would not compensate the three courts for their waste of scarce judicial resources. To allow H&K to continue to press its claims in Haines II would perpetuate an injustice and would compromise the integrity of the state and federal judicial systems. Thus, we find that judicial estoppel is the only adequate sanction under these extreme circumstances.

### d. **Opportunity to Explain**

Finally, equity requires that we give the party to be estopped a meaningful opportunity to provide an explanation for its changed positions. Id. at 320. But here, H&K has had not one, but two opportunities to address the issue of judicial estoppel, once before Judge Golden -- when Balfour raised the issue in its original motion to dismiss[9] and Judge Golden afforded oral argument on that motion -- and once before us. In addition, most of the pertinent facts are taken from court records, and H&K itself supplied the rest. Thus, we find that

---

[9] Indeed, H&K devoted five pages of its response to that motion to judicial estoppel, see Pl. MTD1 Resp. at 18-23.

H&K has had fair opportunities to argue that the doctrine does

not apply, and has failed to present persuasive arguments on that

subject.

Conclusion

We therefore hold that H&K is judicially estopped from

retreating from its unqualified representation to the Court of

Appeals that Judge Golden's July 27, 2007 Order "eliminates the

possibility of a second lawsuit" and therefore grant Balfour's

motion to dismiss the second lawsuit H&K filed.  Because we have

granted Balfour's motion to dismiss Haines II pursuant to Fed. R.

Civ. P. 12(b)(6), we need not address Balfour's Fed. R. Civ. P.

12(b)(7) contentions.

BY THE COURT:


__\s\Stewart Dalzell